# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-03-00150-CR

**Christopher Bryan Wallace, Appellant**

**v.**

**The State of Texas, Appellee**

**FROM THE DISTRICT COURT OF WILLIAMSON COUNTY, 368TH JUDICIAL DISTRICT NO. 01-079-K368, HONORABLE BURT CARNES, JUDGE PRESIDING**

## M E M O R A N D U M   O P I N I O N

A jury found appellant Christopher Bryan Wallace guilty of theft of $20,000 or more but less than $100,000 and assessed a five-year prison term and a $10,000 fine. *See* Tex. Pen. Code Ann. § 31.03(a), (e)(5) (West Supp. 2004). Appellant contends that the evidence is legally and factually insufficient to sustain the jury's verdict; his pretrial motions to quash the indictment and for a continuance should have been granted; he was denied due process and equal protection because the prosecutor held office in two separate branches of government; he was not allowed to ask proper questions during jury selection; the court did not properly instruct the jury regarding accomplice testimony; and the jury was erroneously permitted to conduct independent scientific tests. We find no reversible error and affirm the conviction.

## *Factual Background*

Operations Management International (OMI) is a business engaged in building and operating municipal water and wastewater systems. Appellant was employed by OMI and also operated a business named W4E in Georgetown. From July 1998 through March 1999, W4E submitted dozens of invoices to OMI totaling approximately $37,900, ostensibly for work performed at wastewater plants operated by OMI under contract with the City of Georgetown. Payment checks from OMI to W4E were deposited in appellant's bank account.

Several witnesses employed by OMI testified that the company would sometimes hire outside contractors to perform "out-of-scope" work—that is, work not covered by the terms of the company's contract with the city. The witnesses all agreed that it was against company policy for an OMI employee to perform out-of-scope work. It is undisputed that the payments to W4E were for out-of-scope work. There was also testimony that the work for which W4E billed OMI was not performed, or was not performed by appellant. Robert Moses, OMI's chief financial officer and the named complainant, testified that he did not consent to any payments to appellant other than his salary and incidental work expenses, and that he also did not consent to any payments to appellant for work not performed.

The W4E invoices in question were approved by Daniel Wallace, appellant's father and OMI's project manager in Georgetown. Daniel Wallace testified that he approved the invoices, a necessary prerequisite for payment, knowing that appellant had not performed the work for which he was billing OMI. Daniel Wallace also admitted that he and appellant defrauded OMI of

2

additional money by setting up a second dummy company, GEM, which also submitted invoices for work not performed.

Appellant admitted receiving payments for out-of-scope work he performed for OMI under the name W4E. Appellant testified that OMI's regional business manager, Edward Schwab, knew that appellant was doing this work and had suggested the arrangement as a way of providing appellant with extra compensation. To corroborate this claim, appellant introduced in evidence a plaque from OMI reading, "Presented to Chris Wallace W4E in appreciation for your implementation of OMI's programs, innovative ideas and hard work," and a photograph of Schwab handing appellant a plaque during an OMI meeting. Schwab testified that he never heard of W4E until the investigation that led to this prosecution began, and that he did not recognize the plaque or remember giving it to appellant.

In his testimony, appellant agreed that he did not perform the work reflected on the invoices purporting to be from W4E to OMI and introduced in evidence by the State. It was appellant's contention that OMI officials substituted false invoices for the true invoices in order to make it appear that appellant had billed OMI for work not done. Appellant suggested that this was done in retaliation for appellant having reported OMI's violations of environmental regulations to state and federal officials.

### *Sufficiency of Evidence*

When there is a challenge to the sufficiency of the evidence to sustain a criminal conviction, the question presented is whether a rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 324 (1979)

3

(legal sufficiency); *Griffin v. State*, 614 S.W.2d 155, 158-59 (Tex. Crim. App. 1981) (legal sufficiency); *Zuniga v. State*, No. 539-02, 2004 Tex. Crim. App. LEXIS 668, at *20 (Tex. Crim. App. Apr. 21, 2004) (factual sufficiency). In a legal sufficiency review, all the evidence is reviewed in the light most favorable to the verdict; it is assumed that the trier of fact resolved conflicts in the testimony, weighed the evidence, and drew reasonable inferences in a manner that supports the verdict. *Griffin*, 614 S.W.2d at 159 (citing *Jackson*, 443 U.S. at 318-19). In a factual sufficiency review, all the evidence is considered equally, including the testimony of defense witnesses and the existence of alternative hypotheses. *Orona v. State*, 836 S.W.2d 319, 321 (Tex. App.—Austin 1992, no pet.). Although due deference still must be accorded the fact finder's determinations, particularly those concerning the weight and credibility of the evidence, the reviewing court may disagree with the result in order to prevent a manifest injustice. *Johnson v. State*, 23 S.W.3d 1, 9 (Tex. Crim. App. 2000). The evidence will be deemed factually insufficient to sustain the conviction if the proof of guilt is too weak or the contrary evidence is too strong to support a finding of guilt beyond a reasonable doubt. *Zuniga*, at *20; *see Johnson*, 23 S.W.3d at 11.

Appellant contends the evidence is legally insufficient to sustain his conviction because the payments to W4E from OMI were approved by OMI's authorized representative, Daniel Wallace. This argument ignores Daniel Wallace's testimony that he knew the work being billed was not performed. The jury could reasonably infer from Moses's testimony that Daniel Wallace was not authorized to approve invoices for work he knew had not been done. Viewed in the light most favorable to the verdict, the evidence is sufficient to support a finding of guilt beyond a reasonable doubt. Point of error four is overruled.

4

Appellant's factual sufficiency challenge is primarily an attack on the credibility of the State's witnesses. In particular, he asserts that the various OMI representatives lied when they testified that they did not know about W4E or appellant's connection to it. Even if this assertion were true, the evidence remains that W4E did not perform the work reflected on the invoices, as even appellant admitted at trial. In effect, appellant asked the jury to believe that all the State's witnesses were involved in a conspiracy to frame him for theft in retaliation for his being a whistle-blower. Viewing the evidence in a neutral fashion, we do not believe that it was manifestly unjust for the jury to reject appellant's defensive testimony and to find him guilty beyond a reasonable doubt. Point of error five is overruled.

### *Accomplice Witness Instruction*

At the time of appellant's trial, Daniel Wallace was under indictment for his involvement in the scheme to defraud OMI. As the State concedes, Daniel Wallace was an accomplice witness as a matter of law. *See* Tex. Code Crim. Proc. Ann. art. 38.14 (West 1979) (testimony by accomplice must be corroborated). The trial court did not instruct the jury accordingly.[1] Appellant did not object to the court's charge on this ground, but now asserts that the

---

[1] In its charge, the court instructed the jury:

> You are further instructed that a conviction cannot be had upon the testimony of an accomplice, if any, unless corroborated by other evidence tending to connect the defendant with the offense committed; and the corroboration is not sufficient if it merely shows the commission of the offense. An accomplice means anyone connected as a party to the charged offense.

The charge then segued into an instruction on the law of parties. The court did not tell the jury that Daniel Wallace was an accomplice or admonish them to disregard his testimony unless it was

5

error was fundamental. *See Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (op. on reh'g).

An instruction regarding the proper consideration of accomplice witness testimony is law applicable to the case, and the failure to give such an instruction is error even in the absence of a request or objection. *Howard v. State*, 972 S.W.2d 121, 126 (Tex. App.—Austin 1998, no pet.). But because he did not object, appellant must show that he was egregiously harmed by the court's failure to instruct the jury that Daniel Wallace was an accomplice witness whose testimony had to be corroborated. *Almanza*, 686 S.W.2d at 171. In reviewing for egregious harm, we must determine whether the jury "would have found the corroborating evidence so unconvincing in fact as to render the State's overall case for conviction clearly and significantly less persuasive." *Saunders v. State*, 817 S.W.2d 688, 692 (Tex. Crim. App. 1991); *and see Herron v. State*, 86 S.W.3d 621, 632 (Tex. Crim. App. 2002).

Daniel Wallace testified that he authorized payment on the invoices submitted by appellant in the name of W4E even though he knew that appellant did not perform the work. Several other State witnesses also testified that the work shown on the invoices was not done. Even appellant, in his own testimony, conceded that he did not do the work reflected on the invoices. We do not believe that the jury, had it been properly instructed that Daniel Wallace was an accomplice witness, would have found the corroborating evidence so unconvincing in fact as to render the State's overall case for conviction clearly and significantly less persuasive. Finding no egregious harm, we overrule point of error eight.

---

corroborated by other evidence.

*Jury Experiment*

Appellant's contention that the jury was permitted to conduct an improper scientific test concerns defense exhibit six, the photograph showing him receiving a plaque from Edward Schwab. It was appellant's argument at trial that the plaque in the photograph was defense exhibit eight, a plaque bearing an inscription to "Chris Wallace W4E." This inscription, according to appellant, demonstrated that OMI, or at least Schwab, knew of appellant's connection to W4E. In his closing argument at the guilt stage, the prosecutor argued that exhibit eight was not the plaque shown in exhibit six. He urged the jury to confirm this by closely examining the photograph.

After the jury retired to deliberate appellant's guilt, the State suggested to the court that a magnifying glass be included in the box of exhibits to be sent to the jury room. Defense counsel objected that the request was "premature" and a "continuation of the State's argument." He urged that "to give them a magnifying glass . . . before they have asked for it, I think, would be harmful to the rights of the defendant." After observing that "[i]t is a document case" and "it's not just the photograph," the court ordered that a magnifying glass be included in the box of exhibits "so they think it's just a matter of course."

Appellant's point of error on appeal is that the court "erred by permitting the jury to engage in independent scientific testing of evidence" by providing a magnifying glass to permit the jury to "engage[ ] in an enhanced inspection of an exhibit." Appellant also urges that the use of a magnifying glass by the jury constitutes the improper receipt of other evidence. *See* Tex. R. App. P. 21.3(f) (grounds for new trial). Neither of these contentions comports with his objection below. *See* Tex. R. App. P. 33.1(a) (preservation of error). Moreover, there is nothing in the record to show

7

that the jury actually used the magnifying glass, and thus there is no basis for a finding of harm arising from the alleged error.  Point of error three is overruled.

### *Motion to Quash*

The indictment in this cause alleged that appellant "acquired or otherwise exercised control over property, namely, money, without the effective consent of Robert J. Moses, the owner, and with intent to deprive the owner of the property," and that "the amounts were obtained pursuant to one scheme or continuing course of conduct, and the aggregate value of the property obtained was $200,000 or more."  *See* Tex. Pen. Code Ann. § 31.09 (West 2003).[2]  Appellant filed a motion to quash the indictment on the ground that it did not allege "the particular manner in which the owner's effective consent was negatived."  He later filed a second motion to quash complaining that the indictment "fails to allege any specific checks or invoices which the defendant is accused of obtaining illegally" and "fails to allege in the aggregation paragraph the time period for which he is being accused of committing this continuing course or scheme."  In point of error six, appellant contends these motions should have been granted.

The court of criminal appeals has held that "in a theft prosecution where the State relies upon a defendant's act or omission to negate consent pursuant to § 31.01(4) [now section 31.01(3)], the indictment must allege which of the statutory negatives vitiated consent, or the indictment will be subject to a timely motion to quash for lack of notice."  *Geter v. State*, 779 S.W.2d 403, 407 (Tex. Crim. App. 1989); *see* Tex. Pen. Code Ann. § 31.01(3) (West Supp. 2004)

---

[2] Appellant was convicted of the lesser included offense.

(defining "effective consent"). Under *Geter*, it appears that appellant's original motion to quash had merit. But at the pretrial hearing held to consider appellant's various motions, appellant relied solely on the second motion to quash and did not seek or obtain a ruling on the original motion. Absent an adverse ruling on that motion, no error is presented for review. Tex. R. App. P. 33.1(a).

Even if the issue were preserved, no reversible error is shown. When an indictment fails to convey some requisite item of notice, reversal is required only if the lack of notice had an adverse impact on the defendant's ability to prepare a defense. *Geter*, 779 S.W.2d 407; *Adams v. State*, 707 S.W.2d 900, 903 (Tex. Crim. App. 1986). In his brief to this Court, appellant makes no effort to demonstrate that the defect in the indictment harmed his defense. The present record reflects that before appellant was tried in this cause, he was tried and convicted of theft in Lampasas County. That prosecution was also based on W4E's submission of false invoices to OMI. Appellant was represented by the same attorney in both prosecutions. It is obvious from the record that appellant understood that the State intended to prove that OMI's consent had been induced by deception. *See* Tex. Pen. Code Ann. § 31.01(3)(A).

Appellant did obtain an adverse ruling on his second motion to quash, in which he asked that the State be required to specify the checks or invoices on which the prosecution was based and the time period during which the alleged scheme took place. The motion was properly overruled. In a prosecution for aggregated theft pursuant to section 31.09, "the indictment must allege the 'continuing course of conduct' element, but there is no pleading requirement that it include the specific acts of theft that are aggregated." *Kellar v. State*, 108 S.W.3d 311, 313 (Tex. Crim. App. 2003). The allegation that the offense occurred "on or about January 1998 through December 1999"

9

was sufficient, when the indictment is read as a whole, to inform appellant that the State intended to prove that the scheme or continuing course of conduct took place during those months. *See id*. at 312. Point of error six is overruled.

## *Continuance*

Appellant's counsel filed a written motion for continuance (his third since the indictment was filed) on October 30, 2002, five days before the trial was scheduled to begin. In the motion and at a hearing on November 4, counsel stated that he needed additional time to review the many documents he had received in response to subpoenas served on OMI. Counsel told the court that he had received "three banker boxes worth of documentation from OMI" on September 24, but said that additional material had been received only ten days before the hearing. In response to questions by the court, it was shown that this new material consisted of a list of documents requested by the defense that OMI had either previously turned over or had been unable to find.

The denial of a motion for continuance is reviewed for an abuse of discretion. *Vasquez v. State*, 67 S.W.3d 229, 240 (Tex. Crim. App. 2002). To establish an abuse of discretion, the defendant must show that he was actually prejudiced by the denial of the motion. *Id*. In his brief to this Court, appellant makes the conclusory statement that the denial of the requested continuance denied him due process, but he does not provide any examples of actual prejudice. In reviewing the trial record, we find that appellant's counsel appeared to be familiar with the relevant facts and documents. We find no indication that appellant's ability to defend himself was harmed by the court's denial of the requested continuance. Because no abuse of discretion is shown, we overrule point of error seven.

### *Prosecutor's Status and Voir Dire*

The lead prosecutor in this cause, Dan Gattis, was on the day trial began the Republican nominee for representative from the newly created 20th state legislative district. Gattis had no opponent in the general election, which was held on the second day of trial. In point of error one, appellant urges that Gattis's service as both a prosecutor and a member of the legislature violated the separation of powers and denied him due process and equal protection. *See* Tex. Const. art. II, § 1 ("no person . . . being of one of these departments, shall exercise any power properly attached to either of the others"). In point two, appellant contends the trial court erred during voir dire by not allowing him to question the jury panel regarding any potential bias arising from Gattis's status as elected state representative.

Appellant did not raise the separation of powers issue in either his written "motion to preserve defendant's right to a fair and impartial jury panel" or his argument to the trial court. Instead, it was appellant's argument below that "the jury [would] give anything [Gattis] says or does more credence or value based upon their understanding of his role [as elected representative]." He also argued that it would be impossible to effectively voir dire the jury panel regarding this potential bias. Therefore, he asked the trial court to assign another prosecutor to the case.

Assuming that appellant's separation of powers argument is properly before us, it is without merit. In *State ex rel. Hill v. Pirtle*, 887 S.W.2d 921, 928 (Tex. Crim. App. 1994), the appointment of two assistant attorneys general to serve as assistant district attorneys in a pending criminal prosecution was challenged on separation of powers grounds. The court of criminal appeals held that as long as the elected district attorney retained ultimate supervisory authority over the

11

prosecution, the prosecution power remained in the judicial branch. *Id.* If Gattis's election as state representative made him a member of the legislative branch even before he took the oath of office and his term began, a question we do not decide, as assistant district attorney he remained subject to the supervisory authority of the elected district attorney and his service as prosecutor did not violate the separation of powers. Because appellant's due process argument is premised on his contention that there was a separation of powers violation, it necessarily fails. Appellant makes no argument in support of his equal protection claim. Point of error one is overruled.

During voir dire, appellant asked the court for permission to ask the panelists who they voted for in the primary election for state representative, why they voted for that person, whether their vote would bias them, and whether they had any specific knowledge of Gattis. The court sustained the State's objections to the first two questions. Appellant argues that this denied him the opportunity to intelligently exercise his challenges. In particular, he urges that the disallowed questions were pertinent to the question of bias. *See* Tex. Code Crim. Proc. Ann. art. 35.16(a)(9) (West Supp. 2004).

The trial court has broad discretion over the jury selection process, and its ruling on the propriety of a particular question will not be disturbed absent an abuse of that discretion. *Barajas v. State*, 93 S.W.3d 36, 38 (Tex. Crim. App. 2002). In this cause, the court only prohibited appellant from asking the panelists who they voted for and why. Contrary to appellant's assertion, the court did not prohibit him from asking the panelists whether Gattis's status as soon-to-be representative would bias them in favor of the State. Although appellant did not ask such a question, Gattis did. During his voir dire of the panel, Gattis asked:

12

[M]e running for political office, holding political office on down the road starting in January, does that matter to you one way or the other? Anybody say, "Well, gee, you know, I didn't vote for you. I don't like you, you know. And I'm not going to be fair to you," or on the other end say, "Man, you know, I think everything you said was fantastic. We need to support you in whatever way we can, and we're going to do it by automatically finding somebody guilty." Anybody feel that way? Raise your hand because that's important. We want to have a fair trial.

There is no indication that anyone responded affirmatively.

We are not persuaded that the court abused its discretion by not allowing appellant to ask the panelists if they voted for Gattis. It was not necessary for appellant to know how the panelists voted in order for him to effectively inquire into any possible bias they might have based on Gattis's successful campaign for state representative. Point of error two is overruled.

The judgment of conviction is affirmed.

_____

Jan P. Patterson, Justice

Before Chief Justice Law, Justices Patterson and Puryear

Affirmed

Filed: June 24, 2004

Do Not Publish

13